IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BARBARA SCHAEFER, | No. 4:24-CV-00590 |
| Plaintiff, | (Chief Judge Brann) |
| v. | |
| UNUM LIFE INSURANCE COMPANY OF AMERICA, | |
| Defendant. | |

**MEMORANDUM OPINION**

**FEBRUARY 12, 2026**

### I.  BACKGROUND

Barbara Schaefer ("Plaintiff") brought a complaint against UNUM Life Insurance Company of America ("Defendant") for what she asserts was improper termination of her disability benefits.[1] She brought six claims, including for breach of contract, bad faith insurance practice, and improper denial of benefits as well as breach of fiduciary duties under ERISA.[2]

Parties proceeded to discovery. Plaintiff served on Defendant a series of interrogatories and requests for production of documents, and Defendant responded.[3] Relevant to the instant motion, Plaintiff sought the following topics: employment information, including compensation, for claims adjusters and their

---

[1]  Doc. 16 (Amend. Compl.).
[2]  *Id.*
[3]  34-3 ("Exhibit C," Defendant's Suppl. Responses).

history of decisions; information about the supervision of claims adjusters; compensation to and history of claims referred to medical clinic Dane Street; and documents related to state or federal agency investigation into Defendant.[4]

At the beginning of Defendant's responses to both the interrogatories and requests for production, Defendant laid out a list of "general objections," which it proceeded to incorporate into all of its responses to the interrogatories and requests for production.[5] The general objections included, for instance: that requested material was "beyond the scope of the Federal Rules of Civil Procedure, [and] the Local Rules for the Federal Rules of Evidence;" that the request is "overly broad and unduly burdensome;" that the information sought "is protected by the attorney-client privilege and/or attorney work-product doctrine;" that the request is "vague, ambiguous and beyond comprehension," and other such general objections.[6] Defendant also proceeded to add specific objections to various interrogatories and requests for production, and repeatedly pointed Plaintiff to the "claim file" as the source for sought information.[7]

Plaintiff filed the instant motion seeking to compel Defendant to fully answer the interrogatories and requests for production, and seeking leave to file additional interrogatories beyond those normally proscribed by Federal Rule of Civil Procedure

---

[4] Doc. 34-3 ("Exhibit A," Plaintiff's First Set of Interrogatories).
[5] Doc. 34-3 (Exhibit C).
[6] *Id.* at 79.
[7] *See id.* at Interrogatory Nos. 1, 2, 9, 13, 16, *passim*.

22(a)(1). The motion is now ripe for disposition. For the reasons stated below, the motion to compel is granted in part and denied in part, and the motion to serve additional interrogatories is denied.

## II. LAW

### A. Legal Standard

Federal Rule of Civil Procedure 26(b)(1) provides that a party "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case."[8] Courts interpret relevancy "broadly to encompass any matter that bears on, or that reasonably could lead to other matter[s] that could bear on, any issue that is or may be in the case."[9] Discovery requests are, therefore, relevant so long as "there is any possibility that the information may be relevant to the general subject matter of the action."[10]

In the instant case, Plaintiff seeks discovery through two devices: interrogatories and requests for production. "Unless otherwise stipulated or ordered by the court," Federal Rule of Civil Procedure 33 allows "no more than 25 written interrogatories" relating to "any matter that may be inquired into under Rule 26(b)."[11] "Leave to serve additional interrogatories may be granted to the extent

---

[8] FED. R. CIV. P. 26(b)(1).
[9] *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 350-51 (1978).
[10] *Caruso v. Coleman Co.*, 157 F.R.D. 344, 347 (E.D. Pa. 1994).
[11] FED. R. CIV. P. 33.

3

consistent with Rule 26(b)(1) and (2)."[12] Requests for production of documents are governed by Federal Rule of Civil Procedure 34, which provides that a party served a request under this rule must "produce and permit the requesting party or its representative to inspect, copy, test, or sample...designated documents or electronically stored information...stored in any medium from which information can be obtained either directly or, if necessary, after translation by the responding party into a reasonably usable form."[13] If a party fails to respond to either discovery mode within the required time period, the requesting party is permitted under Federal Rule of Civil Procedure 37 to move for an order compelling a response.[14]

Parties may object to such discovery mechanisms, but "[t]he grounds for objecting to an interrogatory must be stated with specificity."[15] Furthermore, "[a]ny ground not stated in a timely objection is waived unless the court, for good cause, excuses the failure."[16] "[A]n evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond."[17] Additionally, "specific objections must be tied to a particular interrogatory or a class thereof and, thus, general objections to an entire set of interrogatories are improper."[18] The United

---

[12] *Id.* at 33(a)(1).
[13] FED. R. CIV. P. 34(a)(1).
[14] *See* FED. R. CIV. P. 37(a)(3)(B)(iii)-(iv).
[15] FED. R. CIV. P. 33(b)(4).
[16] *Id.*
[17] FED. R. CIV. P. 37(a)(4).
[18] *American Civil Liberties Union v. Gonzales*, 237 F.R.D. 120, 131 (E.D. Pa. 2006) (citing to *Josephs v. Harris Corp.*, 677 F.2d 985, 991-92 (3d Cir. 1982).

States Court of Appeals for the Third Circuit has clarified that general objections are improper where "interposed in an attempt to insulate from discovery a large quantity of material that includes otherwise discoverable material when only some of the material may be protectible."[19]

Moreover, parties may invoke Rule 33(d) to produce business records in response to interrogatories rather than specific information.[20] However, when doing so, the responding party must "specif[y] the records that must be reviewed, in sufficient detail to enable the interrogating party to locate and identify them as readily as the responding party could."[21] Additionally, should the responding party choose to utilize Rule 33(d), the documents provided "must in fact contain the answer to the interrogatory."[22]

### B.  Analysis

Plaintiff asserts that Defendant has failed to fully answer essentially all of the interrogatories and requests for production.[23] After the instant motion was filed,

---

[19] *Grider v. Keystone Health Plan Central, Inc.*, 580 F.3d 119, 139-40 (3d Cir. 2009).
[20] FED. R. CIV. P. 33(d).
[21] *Id.* at 33(d)(1).
[22] *Schreiber v. Eli Lilly and Co.*, No. 05-CV-2616, 2007 WL 9821904, at *2 (E.D. Pa. Mar. 19, 2007) (citing *Caruso v. Coleman Co.*, No. 93-CV-6733, 1995 WL 262521, at *3 (E.D. Pa. Apr. 28, 1995) ("When a responding party invokes Rule 33(d)'s option ... he still has a duty to supply all the information requested and cannot avoid answers by producing documents in which the information may or may not be found.")).
[23] Doc. 32 (Br. in Supp.) at 4 (describing issues with Defendant's responses to Interrogatory Nos. 3, 5-8, 10, 12, 15, 17, 21, 24, 25) and 5-11 (detailing issues with responses to Nos. 4, 11, 13, 14, 16, 18, 19, 20, 22, 23 and issues with Request for Production Nos. 1, 2, 2-9, 10, 12, 13, 14, 15, 16-18, 19, 20, 22, 24, 26).

Defendant served supplemental discovery responses; Plaintiff asserts the responses persisted in their deficiency. In response to Plaintiff's requested information, Defendant elucidated a series of general objections that it incorporated into each response[24] but, in brief, argues specific objections to the following sought topics: employment information, including compensation, for claims adjusters and their history of decisions; information about the supervision of claims adjusters; compensation to and history of claims referred to medical clinic Dane Street; and documents related to state or federal agency investigation into Defendant.[25]

First, the Court will deem Defendant's general objections to each interrogatory and requests for production of documents waived. Defendant's eight "general objections" that it incorporated into *every* answer are clearly "interposed in an attempt to insulate from discovery a large quantity of material that includes otherwise discoverable material when only some of the material may be protectible."[26] Defendant may not shift the burden of determining whether each and every interrogatory or request for production could be objectionable to this Court by invoking the entire realm of possible objections, even where certain objections are

---

[24] Doc. 34-3 at 37, 64.

[25] Doc. 34-1 (Br. in Opp.) at 9, 11, 14, 18. In brief, Plaintiff presented each interrogatory and request for production individually and touted their relevancy. Doc. 32. Defendant has raised specific objections in its brief which appear to cover the field of disputed information and, accordingly, the Court will address the disputes through that lens, as Plaintiff filed no Reply Brief to clarify which arguments are indeed disputed. While Plaintiff is not required to file a Reply Brief, the practical nature of not doing so is to give rise to a significant lack of clarity of what, precisely, remains disputed.

[26] *Grider v. Keystone Health Plan Central, Inc.*, 580 F.3d 119, 139-40 (3d Cir. 2009).

clearly inapplicable to specific interrogatories or requests for production of documents.[27] Accordingly, Defendant may not rely solely on its boilerplate objections when opposing Plaintiff's discovery request, nor will the Court consider them for the instant motion.

Additionally, Plaintiff asserts that, on multiple instances, Defendant indicated that requested information could be found in documents produced to Plaintiff but that, after review of the documents, Plaintiff could not locate it. As noted previously, should a party utilize Rule 33(d) and provide documents rather than specific information, the documents provided "must in fact contain the answer to the interrogatory." On the topics for which Defendant is compelled to provide discovery, elucidated below, Defendant must do so by producing material that genuinely includes the information sought.

Turning now to Defendant's specific objections to Plaintiff's discovery requests. I address each in turn.

---

[27]  *See Roesberg v. Johns-Manville Corp.*, 85 F.R.D. 292, 296 (E.D. Pa. 1980) ("[Opponent] objects generally to this interrogatory as 'overly broad, burdensome, oppressive and irrelevant[,]' a complaint which [opponent] echoes with virtually every other interrogatory. To voice a successful objection to an interrogatory, [opponent] cannot simply intone this familiar litany. Rather, [opponent] must show specifically how, despite the broad and liberal construction afforded the federal discovery rules, each interrogatory is not relevant or how each question is overly broad, burdensome or oppressive.").

Moreover, it appears that this is a fairly typical practice for Unum. *See Dwyer v. Unum Life Ins. Co. of Am.*, 470 F. Supp. 3d 434, 438 (E.D. Pa. 2020); *Wittmann v. Unum Life Ins. Co. of Am.*, No. 17-9501, 2018 WL 1912163, at *2 (E.D. La. Apr. 23, 2018) (Wilkinson, M.J.); *Gray v. Unum Life Ins. Co. of Am.*, No. 17-1778, 2018 WL 4566850, at *4 (C.D. Cal. Sept. 21, 2018) (Kato, M.J.).

### 1. Compensation Information

Defendant's first specific objection is to the compensation information for claims and medical personnel.[28] In request for production of documents No. 2, Plaintiff requests documentation of all payments made by Defendant to its employees identified in Plaintiff's interrogatories, both non-medical and medical personnel, claiming such information is relevant to "Plaintiff's allegation that the Defendant compensated employees for denying or terminating claims."[29] Defendant objects, claiming that the documents are irrelevant.

Courts that have addressed this issue have reached differing conclusions on the discoverability of compensation information.[30] At the very least, courts

---

[28] Doc. 34 at 9 (objecting to Interrogatory Nos. 3, 10, 19, 22, 26, 28, 29 and Request for Production No. 2). Plaintiff seems to be in agreement that Defendant has sufficiently answered the requests for compensation, or subpart f of the interrogatories seeking employment information, as Plaintiff asserts that "Defendant answered all but subpart 'c'" of each interrogatory dealing with non-medical personnel and "all but subparts 'c', 'g', and 'h'" of the interrogatories dealing with medical personnel. Doc. 32 at 4-5. However, it appears that request for production No. 2, which requests compensation documentation for all employees identified in the interrogatories, is still in dispute. Doc. 32 at 8. Accordingly, the Court will deem the issue not fully waived. The Court notes the great difficulty in parsing parties' briefs this way, and is dismayed with the lack of clarity surrounding which interrogatories and requests for production remain disputed.

[29] Doc. 32 at 8.

[30] *See e.g., Atkins v. UPMC Healthcare Bens. Trust*, No. 2:13-CV-520, 2014 WL 1572439, at *2 (W.D. Pa. Apr. 17, 2024) (finding incentive or reward structures discoverable but not compensation documents) and *Myers v. Prudential Ins. Co. of America*, 581 F.Supp.2d 904, 914 (E.D. Tenn. 2008) (same); *Carberry v. Metro. Life Ins. Co.*, No 09-CV-02512, 2010 WL 1435543, at *3 (D. Colo Apr. 9, 2010) (allowing discovery into annual compensation of reviewing doctors); *Willoughby v. Gov't Employees Ins. Co.*, No. 8:23-CV-1260, 2023 WL 9681217, at *2 (M.D. Fla. Jan. 26, 2023) (Noting that, "[i]n bad faith insurance claims, courts often find documents regarding insurance employees' 'job performance, compensation, evaluation, discipline, training, educational background, work duties and hours of work to be relevant.'") (quoting *Wiggins v. Gov't Emps. Ins. Co.*, No. 3:16-CV-01142, 2017 WL 3720952, at *3 (M.D. Fla. Jul. 10, 2017); *Sutter v. Am. Fam. Ins. Co.*, No. 1-20-CV-974, 2022 WL

8

frequently hold that plaintiffs are entitled to discover whether there was "any type of incentive, bonus, or reward program or system, formal or informal, for any employee(s) involved in any meaningful way in reviewing [a plaintiff's] disability claims."[31] Some courts have held documents related to compensation need not be produced but have allowed inquiry into such matters during depositions.[32]

Here, Plaintiff has pled that Defendant denied her disability benefits without examining her, instead having "paid medical reviewers," namely third-party physicians, deny her claim based on a review of her incomplete medical file.[33] Plaintiff has pled that Defendant "pressures claim personnel to terminate claims as well as to deny appeals in order to reduce the amount of benefit paid" and that "[e]mployees who save [Defendant] money by terminating or denying claims are

---

1611796, at *5 (S.D. Ohio, May 20, 2022) (Finding that "employee compensation plans and incentive information are relevant and discoverable" but limiting it to employees directly involved in the handling of the plaintiff's claims).

[31] *See, e.g., Atkins*, 2014 WL 1572439, at *2; *Solano-Sanchez v. State Farm Mut. Auto Ins. Co.*, No 19-4016, 2021 WL 229400, at *12 (E.D. Pa. Jan. 22, 2021) (Perkin, M.J.); *Stallman v. First Unum Life Ins. Co.*, No. 23-20975, 2025 WL 3749611, at *5 (D.N.J. Dec. 29, 2025) (allowing one interrogatory to address "whether the compensation or performance evaluations of First Unum's claims and medical personnel involved in plaintiff's LTD claim decision have been based, during relevant time periods, in any respect on the outcome of their claims determinations."); *Kalp v. Life Ins. Co. of N. Am.*, No. 08-1005, 2009 WL 261189, at *7 (W.D. Pa. Feb. 4, 2009).

[32] *See Bay Point Turtlegrass Villas Ass'n v. Lexington Ins. Co.*, No. 5:20-CV-176, 2021 WL 12135389, at *7 (N.D. Fla. Jan. 20, 2021) (Frank, M.J.) ("[A]t least one court has held that allowing cross-examination of witnesses—including insurance adjusters or managing agents—during their respective depositions would suffice. During such cross-examination, the plaintiff could inquire about compensation.") (citing to *Buckley Towers Condominium v. QBE Ins. Corp.*, No. 07-22988, 2008 WL 5505415, at *6 (S.D. Fla. Oct. 21, 2008) (Torres, M.J.)).

[33] Doc. 16 (Amend. Compl.) at 9-11.

more likely to be rewarded with bonuses compared with those who do not."[34] However, Plaintiff's explanation of the relevancy of purely compensation information is minimal, at best; the only relevancy provided by Plaintiff of such compensation information is whether Defendant "compensated employees for denying or terminating claims."[35] Plaintiff does not explain what value it would bring for her to discover the specific amounts that employees were compensated.

Accordingly, Plaintiff's motion to compel is granted only insofar as it seeks to compel information related to "any type of incentive[s], bonus[es], or reward program[s] or system[s], formal or informal, for any employee(s) involved in any meaningful way in reviewing [Plaintiff's] disability claims."[36] This includes the non-medical and medical personnel, such as insurance adjusters or reviewing physicians, but is limited to "only those adjusters who actually handled some aspect of Plaintiff's claim."[37] Defendant need not turn over documents solely related to compensation, as it would be unduly burdensome for the slight probative value. Additionally,

---

[34] *Id.* at ¶¶ 47-48.
[35] Doc. 32 at 8.
[36] *Atkins*, 2014 WL 1572439, at *2; *see also Solano-Sanchez*, 2021 WL 229400, at *12 ("To the extent that there are employee incentives to close out insureds' claims, or handle claims in a particular manner, such information could reveal facts relevant to the motivations of the employees who handled Plaintiff's claim.").

It appears that Defendant may have already disclosed such information. *See* Doc. 34-1 at 10 (describing the produced documents relevant to incentives). To the extent that Defendant has not produced documents explaining the pay structure of employees, this Memorandum Opinion and subsequent Order serves to instruct them to do so.

[37] *Allied World Assur. Co. v. Lincoln Gen. Ins. Co.*, 280 F.R.D. 197, 204 (M.D. Pa. 2012) (internal quotation omitted).

Plaintiff may still "pos[e] questions relating to potential witness bias—including extent of compensation—at any deposition."[38]

### 2. "Batting Average" Information

Defendant additionally objects to Plaintiff's request to discover, relating to various medical personnel employees who review insurance claims, "the number of claims reviewed from January 1, 2021 through December 31, 2023 and . . . of [the reviewed claims], the number that were found to be supported by the medical evidence in the record and the number that were not found supported by the medical evidence in the records."[39] Plaintiff claims that this information is "essential for Plaintiff to understand the position, responsibilities, and claims handling history of each of the Defendant's employees who played a role in administering Plaintiff's claim."[40] Plaintiff asserts that "[t]he information is relevant to Plaintiff's claims in this matter, particularly regarding bad faith conduct by the Defendant."[41] Defendant asserts that this "batting average" information is not probative and that production of it would be unduly burdensome.[42] Specifically, Defendant argues that "the information requested would require individual determinations on whether each prior claim was correctly or wrongfully decided to even potentially be relevant and

---

[38] *Bay Point Turtlegrass*, 2021 WL 12135389, at *8.
[39] Doc. 34-3 (Exhibit A) at Interrogatory Nos. 9, 10, 12, 15, 17, 19, 21, 22, 28 and 29; Doc. 32 at 4-5.
[40] Doc. 32 at 5.
[41] *Id.*
[42] Doc. 34-1 at 11-12.

would basically require a mini-trial of each claim on why each claim was or was not denied."[43]

The Third Circuit has waded in on the topic, affirming that the denial of such discovery was not an abuse of discretion where the information sought would have imposed a substantial burden on Defendant.[44] The Third Circuit clarified that the probative value of "batting average" information is "minimal at best" because "[a] low reversal rate would not prove bias or a conflict of interest" without a demonstration that "each of those decisions was unreasonable based on the evidence in each file" and that doing so would, as noted above, "require a mini-trial on each of these other appeals."[45]

Accordingly, "[g]iven the high cost of producing the evidence and its minimal probative value," Plaintiff's motion to compel discovery of "batting average" information, namely the amount of prior claims reviewed and the ratio of decisions by medical personnel, is denied.

### 3. Review Policies and Procedures

Next, Defendant objects to interrogatories Nos. 4 and 11,[46] which request information regarding Defendant's procedure for internal review of claims and

---

[43] Doc. 34-1 at 12.
[44] *Reichard v. United of Omaha Life Insurance Company*, 805 F. App'x 111, 116-17 (3d Cir. 2020).
[45] *Id.* at 117.
[46] Doc. 34-1 at 14.

whether the claims administration process is regularly reviewed to determine that claims are being handled properly.[47] Plaintiff asserts that this information is relevant to Plaintiff's claims, especially the bad faith claim, as it is "necessary to determine if Defendant has implemented and maintained safeguards in its claims-handling procedure."[48]

The internal process for claim review, and the supervisory structure for that review process, are relevant to Plaintiff's bad faith claims.[49] Plaintiff's requests for information and document production related to Defendant's policies and procedures surrounding claim review is likely to lead to the discovery of relevant evidence, especially as it relates to Plaintiff's bad faith claims. Accordingly, Plaintiff is entitled to discover the internal procedure for claim review and the supervisory

---

[47] Doc. 34-3 (Exhibit C) at Interrogatory Nos. 4, 11. While Defendant did not specifically reference them in objecting, it appears that at least Interrogatory Nos. 13, 16, 20 & 23 as well as Request for Production No. 12, address the same issue.

[48] Doc. 32 at 4-5.

[49] *See Consugar v. Nationwide Ins. Co. of Am.*, No. 3:10-CV-2084, 2011 WL 2360208, at *6-7 (M.D. Pa. June 9, 2011 (holding that the plaintiff may discover the defendant insurance company's training materials for claim agents, including policy manuals and instructions); *Barnard v. Liberty Mut. Ins. Corp.*, No. 3:18-CV-01218, 2019 WL 461510, at *3 (M.D. Pa. Feb. 6, 2019) (Carlson, M.J.) ("[T]he policy or procedures that govern the way [Defendant's] employees handle inquiries about insurance policies is also relevant to the bad faith claim."); *Kalp*, 2009 WL 261189, at *8 (holding discoverable the "the procedures employed in the evaluation of Plaintiff's claim" including "the identity of agreements, communications and/or other documents related to [medical personnel] and other doctors . . . who were involved in the review of Plaintiff's claim.").

Neither party provided legal support for their positions on this information, and the Court is once again left to sort through parties' thin arguments. Should this matter continue, parties are reminded that "[i]t is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones." *United States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990).

structure for agents, i.e. whether Defendant ensured its employees were accurate in their claim assessments. However, to avoid unnecessary breadth, Defendants need turn over only those review methods and supervisory procedures (or lack thereof) at play in Plaintiff's claim denial; Defendant need not produce documents or information surrounding policies that are far afield from the issue at hand.

### 4. Third Party Medical Providers

Plaintiff also requests information related to the third-party medical examiner Defendant frequently used to review claims: Dane Street, LLC ("Dane Street").[50] Specifically, Plaintiff requests: Dane Street's "batting average," including the number of prior claims reviewed and the ratio of those found to be meritorious;[51] the roles of Dane Street experts in composing and signing their medical reviews and whether other people were involved in the process;[52] documents of "all communications between Defendant and Dane Street, LLC, between 01/01/21 and 12/31/23";[53] all documents related to medical reviews done by certain Dane Street medical personnel;[54] and all documentation of payments made "by Defendant to Dane Street, LLC, for medical reviews for the period of 01/01/21 through 12/31/23."[55]

---

[50] Doc. 31-1 at Interrogatory Nos. 18, 19, 22, 29 and Request for Production of Documents No. 13.
[51] Doc. 32 at 6-7.
[52] Doc. 32 at 7-8.
[53] Doc. 32 at 9.
[54] Doc. 32 at 10.
[55] Doc. 32 at 10-11.

Defendant objects, again, on essentially every ground: "Plaintiff's interrogatories and requests for production surrounding Dane Street are vague, ambiguous, overbroad, unduly burdensome, irrelevant to the claims or defenses of any party to this action and seeks confidential, proprietary business information protected by third-party rights of privacy."[56]

The issues for the Dane Street requests mirror those addressed above with little need for new analysis. First, Plaintiff is entitled to discover information relevant to the decision-making process for her claim;[57] this includes any information related to Dane Street and its medical personnel's role in that process. However, requiring Defendant to produce "all communications between Defendant and Dane Street, LLC, between 01/01/21 and 12/31/23" is unduly burdensome, especially when Plaintiff has shown minimal, if any, relevance of this information to Plaintiff's claims. Accordingly, Plaintiff's motion to compel is granted only to require Defendant to produce the relevant information or documentation regarding the Dane Street personnel's role in Plaintiff's claim denial.

Additionally, Defendant need not provide the "batting average" discovery that Plaintiff seeks for the same reasons delineated *supra*; namely, limited probative

---

[56] Doc. 34-1 at 15.
[57] *See Pietrangelo v. CAN Ins.*, No. 91-7235, 1992 WL 279347, at *2 (E.D. Pa. Oct. 6, 1992) (Powers, M.J.) ("Where, as here, a case involves an assertion of bad faith in the failure to settle a claim, it is necessary for a plaintiff to know the substance of the investigation of the claim including what went into the decision.") (citing to *Pete Rinaldi's Fast Foods, Inc. v. Great American Insurance Companies*, 123 F.R.D. 198 (M.D.N.C.1988)).

value and undue burden.[58] However, Plaintiff may discover how Defendant compensated Dane Street medical personnel, specifically whether there were any type of "incentive[s], bonus[es], or reward program[s] or system[s], formal or informal, for any employee(s) involved in any meaningful way in reviewing [a plaintiff's] disability claims."[59] Just as above, Defendant is not required to produce documents solely related to the amount they compensated the Dane Street personnel, nor is Defendant required to produce all documents of payments made to Dane Street unrelated to Plaintiff's claims; such requests are unduly burdensome in light of the slight probative value. Even so, Plaintiff may "pos[e] questions relating to potential witness bias—including extent of compensation—at any deposition."[60]

### 5. Other Agency Investigations

Furthermore, Plaintiff seeks "all documentation regarding communications to and from Defendant with any state or federal agency investigating Defendant's handling of long-term disability claims within the last ten years," asserting that such information is "relevant to Plaintiff's allegation of bad faith conduct by Defendant in handling her claim, since the Defendant has been investigated, warned, and/or sanctioned for similar practices in the past by regulatory agencies."[61] In response, Defendant objects on the grounds that the request is vague and ambiguous, that it is

---

[58] *Reichard*, 805 F. App'x at 117.
[59] *See supra*, note 31.
[60] *Bay Point Turtlegrass*, 2021 WL 12135389, at *8.
[61] Doc. 32 at 10.

overbroad in scope and time, that it would unduly burden Defendant, that it is irrelevant to the action, and that it is privileged.[62]

While Defendant's objections may be generalized, it is clear that this request is too broad; indeed, it is vague, ambiguous, and overbroad in scope.[63] As a large insurance company, Defendant will certainly have been the subject of agency investigations within the last ten years. Such a request would portend an immense obligation for Defendant, a burden that far outweighs the slight probative value. Defendant need not, and likely cannot, produce every inquiry that an agency has made to it in the past decade. Therefore, Defendant will not be required to produce such discovery. However, Plaintiff may, as with several other topics, inquire into the matter during the relevant depositions.

### 6. Plaintiff's Request to Serve Additional Interrogatories

Finally, Plaintiff requests leave of the Court to serve additional interrogatories in excess of the normally proscribed 25.[64] "Leave to serve additional interrogatories may be granted to the extent consistent with Rule 26(b)(1) and (2)."[65] The Court has denied Plaintiff's motion to compel with regards to various sought topics, and, therefore, some interrogatories or requests for production need no longer be

---

[62] Doc. 34-1 at 18-19. Perhaps it would have been more efficient for Defendant to instead list the objections it does not raise.
[63] Neither party has presented any legal support for their arguments that this information need not or ought not be produced.
[64] Doc. 32 at 13-14.
[65] FED. R. CIV. P. 33(a)(1).

answered. Therefore, Plaintiff's motion for leave to file additional interrogatories is denied.

## III. CONCLUSION

Plaintiff's motion to compel is granted in part and denied in part, consistent with the rationale elucidated in this Memorandum Opinion. Plaintiff's request to serve additional interrogatories is denied.

An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
Chief United States District Judge